[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from an assessment for an extension of water mains brought pursuant to Connecticut General Statutes § 7-137c.
 I
In July, 1998, the plaintiffs purchased a 1.826 acre parcel of real property within the Pleasant Acres subdivision of the City of Danbury ("Danbury"), which subdivision was formerly served by a private water company. Pursuant to court order, Danbury incorporated the private water company into its public water system and extended new water mains throughout the area. The plaintiffs' property abuts Pleasant Drive, along which a new main extension was constructed.
On April 6, 1999, the Danbury Common Council approved a resolution establishing the assessments. On April 13, 1999, Danbury filed notice of the assessments on the city land records, and on June 1, 1999, the tax CT Page 2027 collector filed a "Certificate of Notice of Installment Payment of Assessment of Benefits" as against the plaintiffs' property.
The plaintiffs allege that the assessment itself is "manifestly excessive, arbitrary and an abuse of the discretion of the defendants in that it exceeds the amount of any special benefit to the property of the applicants resulting from the construction of the water improvements and in that it was imposed without the City of Danbury giving prior notice of the pendency of the same in accordance with its usual practice and custom."[1] The plaintiffs have a right to connect to the new water main extension. Based upon the evidence adduced at the hearing, however, the plaintiffs do not foresee connecting to the new water main extension. The plaintiffs rely on water from their well and will drill another well should the need arise. Hence, the plaintiffs claim that this extension does not confer any special benefit to their property.
 II
The text of the statute does not set forth a special benefit requirement for assessment. General Statutes § 7-137c and Article III, § 21-56 et seq. of the Danbury Code govern the procedure by which water main extension assessments are determined and levied. General Statutes § 7-137c, in relevant part, authorizes a municipality to extend water mains into residential areas and provides that the municipality "may require each owner of property which abuts any such main to reimburse the municipality such owner's proportionate share of the cost of such extension at such time and by such rule as the municipality by ordinance determines." It further provides that "[s]uch share shall represent a reasonable proportion of the total cost of such water mains . . ." and that "[sluch shares shall be proportioned in such a way as to ultimately leave the municipality free of any of the cost of the extension . . ."
Article III, § 21-56 et seq. of the Danbury Code provides for the method of assessing for all costs of extensions of new water services. Sections 21-60 and 21-61 provide a specific formula and criteria to establish the assessment for each individual property, based on four elements, equally weighed: area of lot divided assessment; frontage of lot divided by total frontage of lots subject to assessment; number of existing building units on lot divided by total number of building units in area subject to assessment; and property value of lot divided by total property valuation of all lots subject to assessment. The total sum of the four elements is divided by four. That figure is multiplied against the total cost of the water extension to arrive at the individual property owner's proportionate share of the cost of the water main extension. CT Page 2028
Section § 21-65 provides that "[n]o assessment shall be made until after a public hearing before the common council at which the owner of the property to be assessed shall have an opportunity to be heard concerning the proposed assessment. Notice of the time, place and purpose of such hearing shall be published at least ten (10) days before the date thereof in a newspaper having a circulation in the municipality, and a copy of such notice shall be mailed to the owner of any property to be affected thereby at such owner's address. . . . When the common council has determined the amount of the assessment to be levied, it shall file a copy thereof in the office of the clerk of the municipality and, not later than five (5) days after such filing, shall cause the same to be published in a newspaper having a circulation in the municipality. . . ." There is no dispute that Danbury properly noticed and conducted the process pursuant to applicable statute and code required to establish the assessments, nor is there any dispute that the plaintiffs raised an unsuccessful objection to Danbury's April 6, 1999 action establishing the assessment.
The plaintiffs have not alleged that the assessment against their property is not a reasonable proportion of the total cost of the water mains, nor that Danbury's formula was improperly applied, nor that the application of the formula itself results in shifting a disproportionate share of the cost of the water mains to the plaintiffs.
It is apparent from the statute itself that "special benefit" to the properties served by the water main extension is not a requirement for the assessment. Rather, the legislature established a cost-shifting scheme for water main extensions, to permit municipalities to pass along the entire cost of the extensions to the properties abutting the mains without regard for any particular benefit to the individual properties.[2]
General Statutes § 52-210 provides: "If, on the trial of any issue of fact in a civil case, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment as in case of nonsuit, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case."
Practice Book § 15-8 similarly provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not CT Page 2029 granted, without having reserved the right to do so and to the same extent as if the motion had not been made."
"A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case. . . ." (Internal quotation marks omitted.) Thomas v. West Haven, 249 Conn. 385, 391,734 A.2d 535 (1999). When ruling on such a motion, "the question is whether sufficient facts were proved to make out a prima facie case." Id. "In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor. . . ." (Citations omitted; internal quotation marks omitted.) Id., 392. "The right of the court to grant such a motion is to be sparingly exercised. . . ." (Citations omitted; internal quotation marks omitted.) Id., 391.
 II CONCLUSION
The plaintiffs have failed to sustain their burden of proof to make out a prima facie case, and the defendants' motion for dismissal is, accordingly, granted.
Holden, J.